UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

LAQUAN O'BERRY,

Defendant.

---

18 Cr. 277 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion for compassionate release by defendant LaQuan O'Berry for compassionate release from the Metropolitan Detention Center ("MDC"), pursuant to 18 U.S.C. § 3582(c). For the reasons that follow, the Court denies the motion.

I. **Procedural Background**

A. **Offense Conduct, Guilty Plea, and Sentencing**

On June 11, 2018, O'Berry pled guilty, pursuant to a plea agreement, to two counts in a four-count Indictment. One charged knowingly using and carrying a firearm in furtherance of a conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). The other charged being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1).

The context of O'Berry's guilty plea comprised four separate violent episodes—including three shootings—in which he had participated in the preceding months. On September 5, 2017, O'Berry and another person, each holding a firearm, fired multiple rounds at the entrance of a home in the Bronx, New York. *See* Dkt. 20 ("PSR") ¶ 11. The shooting was an apparent act of retribution for an argument the day before. *Id.* On January 3, 2018, O'Berry participated with two confederates in an armed robbery of a bodega in the Bronx. *Id.* ¶¶ 14–17, 21. Displaying firearms, the robbers ordered the store's multiple workers and customers to the ground. *Id.*

¶¶ 14–17. O'Berry, holding a silver firearm, personally directed occupants to the back of the store, where he shoved them to the ground, while his confederates stole cash, cellphones, and clothing. *Id.* ¶¶ 15–17. When another customer entered the store, O'Berry grabbed him, pushed him to the back of the store, and, unprovoked, shot him in the leg. *Id.* ¶¶ 14–18. On January 14, 2018, O'Berry entered the apartment of his then-girlfriend's 22-year-old son, where six friends or family of the girlfriend, including a 5-year-old and a 6-year-old, had gathered. *Id.* ¶¶ 22–23. O'Berry threw a folding chair, started a fight with the girlfriend, and shot the son in the torso, piercing his liver, diaphragm, and lungs. *Id.* ¶¶ 23–27. Finally, on February 8, 2018, after United States Marshals, acting on an arrest warrant issued by a magistrate judge in this District, entered a house in Dayton, Ohio in which O'Berry was hiding, O'Berry ran upstairs, took two female hostages, and shouted to the Marshals, in substance, that "I'm gonna shoot it out and make the whole house a crime scene." *Id.* ¶ 29. O'Berry eventually surrendered. *Id.*; *see also* Dkt. 25. ("G. Sent. Mem.") at 4.

On December 18, 2018, the Court sentenced O'Berry principally to a term of 180 months' imprisonment, within the stipulated guidelines range of 177 to 191 months' imprisonment. Dkt. 26 ("Judgment"); *see also* PSR ¶ 8. The sentence comprised a 60-month sentence on Count Four, followed by a mandatory consecutive sentence of 180 months on Count Two. *See* Judgment at 2; *see also* Dkt. 29 ("Sent. Tr.") at 36. In imposing sentence, the Court found the interests in just punishment, protection of the public, and specific deterrence to weigh heavily. As to the latter factors, the Court noted that O'Berry had committed his crimes despite having—and having not been deterred by—a substantial prior criminal record, and that the September 2018 shooting had occurred just six months after he had been sentenced by a judge in

2

this District for conspiracy to commit bank fraud. *See* Sent. Tr. at 31 (referring to *United States v. Oberry*, 15 Cr. 336 (AKH)).

### B.  New Plea and Resentencing Following *Davis*

O'Berry later filed a *pro se* notice of appeal, Dkt. 31, which the Court of Appeals dismissed as untimely, Dkt. 34.

In 2019, however, the Supreme Court decided *United States v. Davis*, 588 U.S. 445 (2019), holding that a conviction under 18 U.S.C. § 924(c) could not be based on a conspiracy to commit Hobbs Act Robbery. As a result, O'Berry, represented by counsel, and the Government entered into a plea agreement, under which O'Berry, on July 17, 2017, pled guilty to two counts of a superseding information. Dkt. 60. These charged him with discharging a firearm during the course of a robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), and possessing ammunition, knowing that he had previously been convicted of a crime punishable by more than one year in prison, in violation of 18 U.S.C. § 922(g)(1). *Id.*

On October 2, 2023, the Court resentenced O'Berry principally to a term of 165 months' imprisonment. Dkt. 66 ("Amended Judgment"); Dkt. 67 ("Second Sent. Tr."). The reduction in sentence, the Court stated, primarily was based on the difficult conditions of confinement that O'Berry had experienced during the COVID-19 pandemic. *See* Second Sent. Tr. at 27 ("[N]o one could have expected the rigors that the pandemic would impose on incarcerated defendants.").

### C.  Compassionate Release Motion

On September 19, 2024, less than a year after the resentencing, O'Berry, *pro se*, filed a one-page letter seeking a reduction in sentence pursuant to 18 U.S.C. § 3582(c). *See* Dkt. 70 ("CR Motion"). He based the request for relief on the death of his 12-year daughter, and the injuries suffered by her mother, in a 2024 car accident. *Id.* O'Berry stated that, in his view, he

3

no longer is in need of specific deterrence; that he wished to help the mother raise their four other children together; and that "[f]rom this point forward[,] I need solace, and that can only be granted if I'm with my family." *Id.* The following day, the Court reappointed the counsel who had represented him at re-sentencing to file a letter in support of the motion. Dkt. 71.

On November 25, 2024, appointed counsel submitted a memorandum of law in support of O'Berry's motion for early release. Dkt. 77 ("Counseled Mem."). In addition to seeking release based on the death of O'Berry's daughter, counsel noted that O'Berry has been held since his resentencing at the MDC, where conditions of confinement remain harsh. *Id.* at 4–8. On December 20, 2024, the Government filed a letter opposing a reduction in sentence. Dkt. 78 ("G. Opp.").

## II.   Discussion

### A.   Standards Governing Compassionate Release Motions

"[U]pon motion of the defendant," and "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the Court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The defendant bears the burden of proving he is entitled to compassionate release. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (citation omitted)); *see also, e.g., United States v. Clarke*, No. 9 Cr. 705, 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf. *See United States v.*

4

*Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021). However, "[a]s part of the First Step Act of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

Although Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence, *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020) (citing 28 U.S.C. § 994(t)), before November 1, 2023, the Sentencing Commission's only guidance on this point had been promulgated prior to the enactment of the First Step Act. This guidance thus applied only to a "motion of the Director of the Bureau of Prisons," U.S.S.G. § 1B1.13 (historical note), and not "to compassionate release motions brought by defendants," *Brooker*, 976 F.3d at 236; accordingly, the Second Circuit held in 2020, this guidance "[could not] constrain district courts' discretion to consider whether any reasons [were] extraordinary and compelling" in such cases, *id. See also id.* at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). Thus, through November 1, 2023, when assessing a motion brought by an imprisoned defendant and not the BOP, a district court was not constrained by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons and could "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237.

Effective November 1, 2023, however, the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions. *See generally* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023). The

amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated.

The Commission's updated guidance identifies six circumstances that, singly or in combination, may so qualify. U.S.S.G. § 1B1.13(b). These are:

- *Medical circumstances of the defendant.* In addition to previously recognized circumstances such as a defendant suffering from a terminal illness or a serious medical condition. *Id.* § 1B1.13(b)(1)(A)–(B), the amended guidelines direct courts to consider whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care" that is not being provided in prison and without which the defendant is at risk of serious health deterioration or death, *id.* § 1B1.13(b)(1)(C), or is held at a facility affected by or at imminent risk of being affected by an outbreak of infectious disease or other "ongoing public health emergency declared by the appropriate federal, state, or local authority," where "due to personal health risk factors and custodial status," the defendant is at a greater risk of severe complications upon exposure, and where "such risk cannot be adequately mitigated in a timely manner." *Id.* § 1B1.13(b)(1)(D). This factor was informed by compassionate release decisions coming out of the COVID-19 pandemic. *See* U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 206 (Nov. 1, 2023).

- *Age of the defendant.* Coupled with a "deterioration in physical or mental health corresponding with the aging process as well as the portion of the original sentence served at the time of a compassionate release motion, this may support sentence reduction. U.S.S.G. § 1B1.13(b)(2).

- *Family circumstances of the defendant.* Where the defendant is the "only available caregiver" for an immediate family member, this may support a sentence reduction. *Id.* § 1B1.13(b)(3).

- *Victim of abuse in custody.* Where the defendant while in custody on the sentence in question was a victim of sexual abuse, or physical abuse resulting in serious bodily injury "committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant," and the misconduct was "established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding," this may support a sentence reduction. *Id.* § 1B1.13(b)(4).

- *Catchall provision.* Where a defendant presents "any other circumstance or [a] combination of circumstances" that themselves or with the above circumstances "are similar in gravity" to those above, such may support sentence reduction. *Id.* § 1B1.13(b)(5). The Commission "rejected a requirement that 'other reasons' be similar in nature and consequence to the specified reasons. Rather, they need be similar only in gravity[.]" U.S. Sent'g Comm'n, Guidelines Manual 2023:

6

Supplement to Appendix C at 207 ("[T]he Commission continues to believe . . . that judges are in a unique position to determine whether the circumstances warrant a reduction. Guidance beyond that provided in the amended policy statement regarding what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts[.]" *Id.* (cleaned up).

- *Unusually long sentence plus changes in law.* Where "a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6).

Finally, even if extraordinary and compelling reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

**B.  Discussion**

O'Berry's motion for early release is unusual, in that, less than a year earlier, he had been resentenced. At the October 2023 resentencing, occasioned by O'Berry's entry of a new guilty plea as a result of *Davis*'s invalidation of one count to which he had pled guilty, the Court took full account of the developments since O'Berry's original sentencing nearly five years earlier. Those circumstances—predominantly the harsh conditions of confinement O'Berry had faced during the COVID-19 pandemic—led the Court to reduce his sentence by 15 months.

As a result, O'Berry's pending motion for a new round of sentence reduction necessarily must rely on developments since the resentencing. Neither development to which O'Berry and his counsel point, however, qualifies as an extraordinary or compelling circumstance justifying a sentence reduction. And even if either did, the § 3553(a) factors, and particularly the interests in

7

just punishment, specific deterrence, and protection of the public, require O'Berry to serve the sentence imposed.

### 1. Extraordinary and Compelling Reasons

O'Berry first cites the death of his 12-year-old daughter. CR Motion at 1. That tragedy is of course awful, and the Court is deeply sympathetic to O'Berry for this terrible loss. The death of a child is also undeniably extraordinary in its rarity. However, O'Berry does not demonstrate why the death of his daughter should result in his release from prison, let alone some six years before his earliest possible release date (December 2030). *See* G. Opp. at 6. O'Berry's *pro se* submission states, conclusorily, that, given her injuries, the child's mother, whom the PSR and defense counsel identify as Tinyetta Davis, needs "help around the clock." CR Motion at 1; *see* Counseled Mem. at 4; PSR ¶ 71. Notably, his counseled submission does not reiterate that argument or suggest that O'Berry's release is necessary to or would assist Ms. Davis or any other person. It instead states that early release would assist O'Berry to "properly mourn" for his daughter in a manner that is difficult in prison and particularly in the confines of the MDC. Counseled Mem. at 5.

These circumstances do not support O'Berry's early release, let alone barely halfway through his rightly imposed sentence based on horrific acts of violence. The Sentencing Commission has recognized that the death or incapacitation of a caregiver of a minor child may, in some circumstances, support a finding of an extraordinary and compelling reason for early release. *See* U.S.S.G. § 1B1.13. But courts have generally required a showing "of evidence from several sources indicating that the defendant is the only available caregiver for a family member in dire conditions." *United States v. Lindsey*, 13 Cr. 271, 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) (citation omitted); *see United States v. Ayala*, No. 21 Cr. 111, 2022 WL 2334041 (S.D.N.Y. June 27, 2022) (denying compassionate release where defendant "d[id] not

argue that he is the only available caregiver for his son"); *United States v. John*, No. 15 Cr. 208, 2020 WL 6581217, at *2 (S.D.N.Y. Nov. 10, 2020) (defendant's wife's "struggl[e] to care for their young children and his unwell and aging parents . . . d[id] not constitute an extraordinary and compelling reason to shorten his otherwise justly deserved sentence").[1] No such showing has been made here. On the contrary, the PSR casts grave doubt on Berry's such claim. It does not reflect any ongoing relationship between O'Berry and Ms. Davis. It reflects instead that, after that relationship, O'Berry had a child with another woman, Kisha Sewell; that O'Berry later was in a relationship with a different woman, Donna Jessup, with whom he did not have children, and who was the mother of the victim whom O'Berry shot on January 14, 2018, PSR ¶¶ 70–73; and that, between November 17, 2017 and his arrest, O'Berry stayed "at multiple friends' residences . . . as he was experiencing relationship problems with Ms. Jessup," *id.* ¶ 73. In light of these circumstances, O'Berry's unsubstantiated suggestion that his release in some manner would assist Ms. Davis, let alone rise to the level of an extraordinary and compelling reason for his early release, cannot be credited.

To the extent O'Berry takes issue with the MDC—and those grievances are articulated only in his counsel's memorandum, not his own—this also does not justify his early release. This Court, like many others, consistently recognized the harsh conditions at the MDC as a significant mitigating factor at sentencing. However, as O'Berry's counsel acknowledges, since his resentencing, O'Berry has *asked* to remain at the MDC, to better enable family visits. *See*

---

[1] *United States v. Montevecchi*, 18 Cr. 15 (S.D.N.Y. May 7, 2021), on which the defense relies, *see* Counseled Mem. at 6, is inapposite. The defendant there sought and was granted release to attend his son's funeral. As the District Court in that case noted, the defendant's motion had been filed on the date he had originally been scheduled to be released to a halfway house; and that date had been extended due to the BOP's mandatory quarantine requirements during COVID-19. *Montevecchi*, at 1. Here, in contrast, O'Berry seeks release approximately halfway through the service of his sentence.

9

Counseled Mem. at 4 n.2. O'Berry articulated that choice, in fact, in his brief in connection with resentencing, filed months before the death of his daughter. *See* Dkt. 64 at 6–7. In these circumstances, with O'Berry having pushed, successfully, to forego transfer to a full-time BOP facility, he cannot reasonably invoke the harder conditions at the MDC as a basis for a reduction of sentence. In any event, the Government represents that the BOP is now arranging for O'Berry to be returned to Federal Correctional Institution Hazelton, where he had been held before his resentencing. *See* G. Opp. at 5. That transfer should result, going forward, in less arduous conditions of confinement.

In a final bid to satisfy § 3582(c), O'Berry cites his steps towards rehabilitation. *See* Counseled Mem. at 8–9. These have entailed taking a large number of courses and, with limited exceptions, maintaining a clean disciplinary record. *See id.*; *see also* G. Opp. at 6 n.3. This forward progress is of course commendable. But it is not by any means extraordinary. The case law reflects the expectation that defendants will use their incarceration productively, and accordingly does not support finding that taking BOP coursework and abiding by prison rules qualifies as extraordinary and compelling circumstances justifying early release. *See, e.g.*, *United States v. Corbett*, No. 10 Cr. 184 (PAE), 2023 WL 8073638, at *7 (S.D.N.Y. Nov. 21, 2023) ("[P]articipation in programming aimed at rehabilitation is expected of inmates[.]"); *United States v. Morales*, 10 Cr. 392, 2021 WL 3038650, at *2 (S.D.N.Y. July 14, 2021) ("Making good use of one's time and obeying the rules in prison is not uncommon, and indeed is expected."); *United States v. Saleh*, No. 93 Cr. 181, 2020 WL 3839626, at *4 (S.D.N.Y. July 8, 2020) ("[E]very inmate should strive for a productive institutional record while incarcerated because that is what is expected."). O'Berry's claim on this ground is weaker, too, because the Court—at resentencing and in imposing a lower sentence than originally—already took into

account his coursework through October 2023, while noting that productive use of time in custody is expected. *See* Second Sent. Tr. at 28–29. To avoid double counting, O'Berry's bid for § 3582(c) relief on this ground can rely only on his courses between resentencing and today.

O'Berry accordingly has not established extraordinary and compelling circumstances supporting compassionate release.

### 2. Section 3553(a) Factors

Even if his daughter's death and the conditions at the MDC since his resentencing did present an extraordinary and compelling basis for release, the § 3553(a) factors, considered in combination, overwhelmingly favor the sentence imposed. The Court incorporates by reference its detailed assessment of these factors. A brief review underscores why the 180-month term the Court—reduced subsequently by 15 months to account for the rigors of prison during COVID—was minimally necessary to achieve the critical sentencing factors of just punishment, specific deterrence, and protection of the public.

As to just punishment, the Court, after reviewing the facts of the three shootings comprising O'Berry's spree in late 2017 and early 2018, stated:

> For obvious reasons, this is this is deadly serious conduct. Each time you took aim at people with nothing even approaching a legal justification. Each time you took other[s'] lives into your hands. Your conduct was the product each time of some blend of anger, impulse, retaliation, and a complete failure of self-control. . . . [E]ach time you demonstrated a callous disregard for human life. Although the conduct here has not been labeled attempted murder, death easily could have resulted. Your shots were certainly aimed at other people. The fact that the three incidents occurred in a short timetable gives me further grave concern, that had you not been soon thereafter apprehended, similar such rage-driven violence might soon have occurred with heaven knows what outcomes.
>
> The photograph that's been handed up . . . is alarming. This is graphic evidence, a picture of victim number 1 in the hospital, a 22-year-old young man, with all sorts of intubations and all sorts of bandages. This is what shootings do when they don't lead to death. This is your handiwork.

11

> The statement by [victim-1's father] was very impactful to me. It underscores the human cost of the violence you did. People are not simply numbers. It's not just that you had three victims. Each of the victims whom you shot at, or in two cases hit, suffered life-changing injuries, whether physical, emotional[,] or otherwise, and as you heard from [victim-1's father], the impact of what you did extends far beyond the individual whose body or bullets hit.
>
> I thank you again, [victim-1's father], for driving home the human consequences of a crime like this.

Sent. Tr. at 29–30.

As to specific deterrence, the Court reviewed at length O'Berry's prior criminal record, which included four prior offenses, including a robbery in which he had put a knife to the neck of a delivery person and been sentenced to a term of five years' imprisonment, and the conspiracy to commit bank fraud for which O'Berry had been sentenced to 14 months' imprisonment in March 2017. Sent. Tr. at 30–31. The Court then stated:

> None of your prior brushes with the criminal justice system, none of your terms of imprisonment, not the term of supervised release, none of this held you back, none of this deterred you from committing any of the crimes for which you are standing accountable today. Nor can it be said that the crimes committed here were the product of youth or adolescent bad judgment. You today are a fully grown man of age 32.
>
> I am left to conclude that if any sentence I impose is capable of getting your attention and causing you to control your violent impulses and anger, it would have to be a very long one. The sentences you have received to date have not held in check your capacity for violence.

*Id.* at 31–32.

Finally, as to protection of the public, the Court found that factor "weighty here, indeed, . . . paramount," *id.* at 32, given O'Berry's recidivism and the violent nature of his crimes:

> I have to candidly consider the possibility that specific deterrence just may not work for you, and that you are going to pose some degree of risk when you are at liberty. You yourself acknowledged today that you are what I would call a clear and present danger to others, including to your loved ones. It was striking to me that you, in effect, asked to be put in prison where you can't be a harm to others. You acknowledge the risk you run.

> It is striking and alarming to me that you were in three shootings, back to back to back, and the experience of the first in potentially wounding or killing someone didn't deter you from committing the second. If anything, maybe you felt that you could get [a]way with this sort of behavior. And after you committed the second shooting, which hit somebody, that experience, which should have caused you to pause, didn't hold you back from committing the third. The public here has a very clear interest in being protected from you. A longer sentence serves that interest, including a guideline sentence, which will put you in prison deep into your age 40 decade.

*Id.* at 32–33.

The Court also reviewed O'Berry's challenging background and other mitigating factors. *See id.* at 25–26, 34–35. But in the end, the Court's assessment was that the interests in just punishment, specific deterrence, and protection, and particularly the exceptional gravity of O'Berry's violent crimes, demanded the 180-month sentence imposed. *Id.* at 35–36. Accordingly, at resentencing, the Court maintained the original sentence, save to credit O'Berry for the unexpected rigors of COVID custody. *See* Second Sent. Tr. at 27–28. The Court firmly stands by that considered assessment today. O'Berry's early release would offend these paramount sentencing interests and would be incompatible with the § 3553(a) factors, considered as a whole. The Court accordingly denies O'Berry's motion for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A) (release permissible only if compatible with § 3553(a) factors); *see also, e.g., United States v. O'Bryant*, 16 Cr. 317-3 (PAE), 2023 WL 8447995, at *6 (S.D.N.Y. Dec. 6, 2023) (denying compassionate release even if wife's "physical needs presented an extraordinary and compelling reason for release, [because] his release would be inconsistent with the § 3553(a) factors, viewed as a whole"); *John*, 2020 WL 6581217, at *3 (denying compassionate release "[e]ven if John had established that his health, or his family circumstances, or some other reason . . . augured in favor of granting his release, the sentencing factors set forth at 18 U.S.C. § 3553(a) would nonetheless counsel against it"); *United States v. Butler*, No. 18 Cr. 834-10

13

(PAE), 2022 WL 17968627, at *3 (S.D.N.Y. Dec. 27, 2022) (§ 3553(a) factors, considered "in totality," disfavored early release); *United States v. Wright*, No. 15 Cr. 445-3 (PAE), 2022 WL 134870, at *5 (S.D.N.Y. Jan. 13, 2022) (similar); *United States v. Hope*, 464 F. Supp. 3d 646, 650 (S.D.N.Y. 2020) (similar).

## CONCLUSION

For the reasons stated, the Court denies O'Berry's motion for compassionate release. The Clerk of Court is respectfully directed to terminate the motion pending at Docket 77.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: December 30, 2024
New York, New York